Good morning your honors and welcome to Jacksonville. We appreciate you all being here and allowing us the privilege of hosting you for the week. My name is Michael Lockamy. I'm from the Bedell firm here in town and I represent Mr. Bright who is the appellant here. In its order granting the defendant's motion to dismiss, the district court erred by viewing the complaints allegations in the light most favorable to the defendant, to the movement. And that really can't be disputed here because as you probably noticed the order that came out is essentially a cut and paste of the motion to dismiss. Let's talk about some of the claims specifically and then obviously we want to let you get to your argument. But talk about the moment in time when Mr. Bright has an altercation with one of the employees after the police are there. Are the police entitled to take any action against him for that incident based upon the allegations in the complaint viewed in the light most favorable to your client? They may be, but there's two points on that. One, there's nothing in the complaint that indicates that the police saw that action. You're talking about once the police were there, there was a moment where the plaintiff reached out and restrained one of the employees. Or grabbed one of the other employees. But there was no fighting. He affirmatively says there was no fighting. He never threw a punch. And it's unclear by how it's pled whether the police saw that at all. The very next paragraph of the complaint says the police then came on the scene or something like that. Which could be inferred that they were in another area and then they turned their attention once that occurred. But there's nothing in the complaint, or you can certainly infer that the police saw that, but that would be an inference in the wrong direction at this stage in the proceedings. So, and there's a couple of facts in, you know, the qualified immunity was, certainly is the theme of the day today and was the theme of the order as well. And there were facts that the motion and the order got wrong. And that is one of them. The order says over and over again that the police saw the person fighting. The only time that they could have possibly seen the folks fighting was the incident that you just mentioned. And if you look at that paragraph, it is not clear that they saw it and it was certainly not pled that they saw it. The earlier events where the employees roughed up Mr. Bright, it's clear that the police were not there. That they had not even arrived yet on the scene. And that's the first and second page of the complaint. Now, maybe you can help me with regard to this. And what I'm trying to do is figure out, narrowing the scope of what we really have to figure out. Because obviously, Mr. Bright filed his complaint pro se and it's not written in the way that a lawyer would have drafted it. Is there anything that you think was wrong with the dismissal of the First Amendment retaliation claim? There's something in the complaint that sort of looks like that and that's one of the things that Mr. Bright in his pro se brief addresses. To the extent that there's any such claim in the complaint, did the district court err in dismissing it? The second count is for false arrest and it's based on retaliation, if that's the claim that you're talking about. I really don't know because I'm trying to read Mr. Bright's brief in the light most favorable to him and liberally, but I'm not quite sure. The false arrest claim is based on retaliation, the First Amendment retaliation. It was improperly dismissed and that's because they didn't have probable cause to not arrest him but to involuntarily commit him, to Baker Act him. He alleges, in the light most favorable to him, that he gave the officers his information, they ran his information, presumably in their squad car, came back, figured out who he was, figured out that he had sued the city of Tampa or police officers before and then at that point they wanted to retaliate against him and they went and they Baker Acted him because of that event. That is a viable claim for false arrest and so it should be able to proceed. What does the complaint say, if anything, about what the police officers were told when they arrived on the scene? It doesn't say what, I don't believe it says what the specific officers were told. It certainly says he was the one that called 911 on two occasions and he complained about the employees and so to the extent anything can be inferred from there, it would be his side of the story is what the police had when they arrived on the scene. But again, it is not clear. And as the court has pointed out, it is unclear but you've got to take it both in light of Mr. Bright because he's the non-movement but also because he's going as pro se and the order gets not only the facts wrong, as we discussed with the fight, but it also gets the conclusions wrong and one of the conclusions that it made was at page 34 of the record, the facts demonstrate that the officers took appropriate action under the circumstances and they acted in Bright's best interest by ensuring he was evaluated and not taken to 34. But that can't be squared with the allegations of the complaint. In paragraph 43 of the complaint, he says these defendant officers orchestrated a plot to falsely Baker Act me. You can't square those two things and certainly at this stage, you cannot draw that conclusion based on the allegations that were made here. Let me, I'm sorry, let me take you back to the prior question because this is the part that I want to make sure I understand. The district court either correctly or incorrectly says that Mr. Bright in his own complaint alleges, and this is a quote from page two of the order, that the officers were inclined to believe the checker employees version of events that they were merely defending themselves after Bright struck defendant Castro Lopez and defendant Thomas Austin. So, did the complaint include any allegation that the store employees gave the police their version of events? I don't believe so, your honor. No. Okay. You just think the district court got that wrong? Yes, your honor. I believe the motion got it wrong and then the order incorporated that inaccuracy. What we know is that Mr. Bright called 911 and when they arrived, he says in the complaint they took his side. He does not provide what information the cops had in order to make that determination other than it seems to be that the turning point was when he gave them, the cops, his personal information to run and they figured out who he was. Then they decided to retaliate against him for taking actions against him. And there's even a quote in the complaint where he says, he says, one of the police officers says, you sue cops. What can we do? And at that point in time, they refused to investigate. They refused to protect Mr. Bright from a threatening checkers employee and they retaliated against him from Baker acting. And that, those things are, certainly support the false arrest count, count number two. I mean, Mr. Bright and his pro se brief raises nine or 10 issues and he refers to some of the things as counts or claims. And again, I'm trying to make sense of how to collapse these. There's the false arrest claim, which is the same basic thing as the detention for the Baker Act, right? Correct. Your honor. Yes, your honor. Okay. Then there is a false imprisonment claim. I don't know if that's separate or if that is subsumed within the false arrest through the Baker Act scenario that followed. I take it as it would be subsumed under the other. Yes, your honor. Okay. So that's your- Those are part of the state law claims. Right. But it's just one claim. He, you may call them something different, but it's just one claim. They shouldn't have detained him. They shouldn't have taken him away and they shouldn't have submitted him to a Baker Act determination. Yes, your honor. Right. Okay. And the retaliation is also part of the false arrest claim. It's the reason for the false arrest. It's the theory and the motivation. Yes, your honor. Okay. And then there's an excessive force claim. And that is separate. Right. Correct. And then there is a municipal liability claim, right? Correct. There's a conspiracy claim. And that's under state law only? Yes, your honor. Okay. And then there's a negligence claim and an intentional infliction of emotional distress claim. Both of those under state law as well, right? I should say the conspiracy does reference the equal protection and the fourth and 14th amendments. So you think that's better construed as a federal claim? I believe given the title, we would have to construe it that way. Yes, your honor. So what we have then are, we have three or, so there are five independent claims plus an allegation of municipal liability for some of those claims. Correct. The policy and practice that led to the events. Correct. But that's based on the underlying violations. Correct. Okay. I got it. Thank you very much. But again, I think the important point here is where are we in the proceeding? This is just on the motion to dismiss. The facts were wrong in the order. The conclusions that were drawn from those facts were drawn in the defendant's favor and that was improper. And at this point, even though certainly the complaint could be more clear, he has stated a cause of action for the excessive force, the false arrest, and the other items. Thank you, your honors. All right. Thank you so much. May it please the court? Ms. Richardson. Good morning. Good morning. Ursula Richardson from the city attorney's office in Tampa on behalf of the city of Tampa, Mayor Bob Buckhorn, Chief of Police Eric Ward, Officer Nicole Sackrider, and Officer James Wolfe. We believe that the problem is what the court is kind of pointing out, that Mr. Bright's complaint mixes a little bit of factual detail with more of his conclusions about why the officer should have believed him, why his version was more credible. But what the court was asking earlier, the complaint certainly intimates the way that it is pled, that when the officers arrived on scene, the officers were told by at least the manager and some other witness that apparently Mr. Bright was the aggressor in this particular case. Where is that in the complaint? The way that I intimate that is that would be in, I'm sorry, just give me a second. It's kind of page seven of the complaint. I don't know where it is in the record, but it's docket 27. I have it. Down at page seven, and it says basically, I'm sorry. Which paragraph? The very last paragraph, that would be 21. Defendant officers knew that the checkers, it says the checks, but they mean checkers, employees false statements alleging that plaintiffs struck the manager and or defendant Thomas was impossible, ridiculous, or ludicrous. However, even though he keeps alleging throughout his complaint that it was ridiculous for the officers would have known that that version of it was ridiculous. I do realize that he conflates two issues because Mr. Bright focuses a lot on the fact that they didn't seem to believe what happened before they actually arrived on scene, but the issue about whether or not there was reason under Florida statute, the Baker Act, to believe that he had a mental illness and that he was in need of an involuntary examination are complete and separate from this issue about whether he was battered or whether he was merely defending themselves, and that's what this complaint does not do. It does give the impression that the officers are being told by the employees that they were battered. They're clearly at their jobs doing what they're supposed to do when this particular aggressor comes on the scene and that they merely defended themselves. Even at that moment, if you read it, I guess if you take it chronologically the way that Mr. Bright has written it, it's not until after he gets into the fight with the employee or tussle, battery, afray, whatever you want to call it, but until he goes hands-on with the checker's employees while the police are at the scene, it's not until then that any force is used against him, and even then, that force is only to restrain him. He's saying that he was taken to the ground, he was threatened with a taser, not that any taser was actually used, that they held him down using the knees. I believe he says that his jaw might have been impacted at that particular point where they're holding him down, and then at that point he's restrained, handcuffed, and then put on a stretcher to be taken to St. Joseph's Hospital for the involuntary mental examination. Even if you credit some of what he says, and I'll even spot him, that for some reason these checker's employees attacked him for no good reason at 12 o'clock in the morning, but the officers would not have been aware of that. I know that he complains a lot in the complaint that there was evidence that they could have looked at to do that. I still want to separate the two issues that even if we say he was not the aggressor, and he got jumped on, and that there was some proof that these officers could have looked at to see that, that's separate and apart from what they personally observed when they would have needed to be able to write in a Baker Act report that is required, what it is that they saw for themselves with Mr. Bright that made them believe he had a mental illness, and that he was a danger to himself or others, obviously fighting in the presence of the police or grabbing someone would have given them, could have arguably given them the impression that Mr. Bright needed to have some type of psychiatric assistance. I go further to say in my brief that I believe by his own, by the requirements of the statute that if you do not meet the requirements of involuntary examination that they must release you immediately, or at a minimum they can hold you for 72 hours, and by Mr. Bright's own admission in his complaint he was held for two weeks, so that at least is some inference that the trained professionals saw some, also saw some indication that Mr. Bright needed some type of psychiatric assistance in this particular case. Ultimately what Mr. Bright focuses on more than anything else in the case is that he believes that the officers got it wrong because they did not automatically just go with every single version of what he said. What Your Honor brought up about the retaliation claim, first of all I don't believe the facts as Mr. Bright has cited them support any type of First Amendment retaliation because at least he's saying they learned that he has had some history with the police department, and even at that point they just may have not the most pleasant attitude with him, but they didn't physically take any action against Mr. Bright or do anything until after he engages in whatever the physical conduct is that they observed. Mr. Bright references numerous times in the complaint the security camera footage. Correct. From the checkers. Was that introduced? No. Although there are references to attachments or that he has, even with the appendix it says that he attached like the Baker Act report, I went through the record thoroughly to make sure I hadn't missed any exhibits, so the video isn't part of the record. His cell phone video isn't a part of the record. What about he describes as exhibit one a phone recording of the incident at checkers? That's not in the evidence. I didn't find it. That's why I'm asking. He mentions all of these things, again even in his appellate brief he mentions that he has somehow after the case has already been decided attached a copy of the Baker Act report because that's one of the things that I argue is that the court, he keeps saying they falsified things, they lied about things, but it's unclear what exactly is in the report. I know this is a little bit different from an arrest case where even in the Franks case, even if you get arrested on a warrant and you make the allegation that the officer has said something false in the warrant, basically the court will go through the habit of basically excising those portions that the plaintiff says are false or that have been proven to be false and based on what is left make a determination of whether or not cause for in the written document. Here there was no written document for the district court to look at to determine what it actually said as far as the cause to believe that he needed the Baker Act and certainly he implies in his appellate brief that he has now attached that document so that the court can see what it said and what he's alleging, but it's still not a part of the record. So we still are all here left to speculate about what it was that the officers wrote in the report to support the reason they believed he needed the involuntary mental examination. I don't believe that Mr. Bright's complaint sufficiently puts forward a cause of action as far as his Fourth Amendment claim that the officers unreasonably seized him for the Baker Act. It also leaves a lot to be desired in his claims that they have used or that they used excessive force against him and in restraining him subsequent to his fight and for those reasons I believe that the district court is correct. To the extent that... Can I ask you a question please? Yes sir. In response to one of my questions, Mr. Lockham, he said that he didn't think that the complaint alleged that the police saw Mr. Bright's grabbing or restraining of the checker's employee after they had arrived. I believe that's correct. I believe it is in my appellate brief where Mr. Bright seems to say that they should have known that even on the second... Even though the officers weren't physically present for the first altercation issue with the checker's employees, he makes the allegation that they should have known that he was merely defending himself in the second incident in the parking lot where he's sitting by some type of car. However, I argue that you cannot... That the complaint doesn't support that they would have known that he didn't start whatever that second altercation was because he does not allege where they were or what they could have seen. It merely alleges that at some point they realize something is going on and then they go over to separate them. I believe the complaint shows that based on the way he writes it, that for whatever reason those police officers, when they did notice that something was happening, it appeared that he was the aggressor since they take the issue of threatening him with a taser probably to stop the altercation and also getting him down on the ground and restraining him at that point. It at least gives the impression that whatever they did finally notice or observe made them believe that he was the aggressor. That probably is also consistent with his allegations that at some point the officers were painting him as the bad apple, that he was belligerent, that he was unruly. So, if that is the impression they got of Mr. Bright when they arrived on scene, then it wouldn't probably be a stretch to imagine that once they see him engaged in some type of physical contact with this same checkers employee that was a part of the original altercation that to believe that he was the one who did it. But ultimately, I think we don't get anywhere on this issue because Mr. Bright just says they, he spends a lot of time in the complaint just saying they got it wrong. They got it wrong. They got it wrong. And I believe that even if you say that the officers got it wrong about who really started the fight and the officers got it wrong about what was happening in the second altercation when they were physically present, it still doesn't rise to the level of him proving that there was an unreasonable seizure of him for the mental health issue or that they unreasonably used force to stop whatever this issue was when they finally do observe the altercation between him and this employee. Well, doesn't he say, though, that the officers fabricated their reports and that those fabrications were, I guess, part of the basis also of Baker acting him? He does say that a lot throughout his complaint, but the problem is, A, we don't know what it is that he's saying was falsified, and B, if the falsification is because the officers chose to believe one version of the events versus the others, I don't know that that's a falsification as much as he just disagrees with the version they chose to believe. And I appreciate what you're saying, and I think that certainly if that's how the facts are borne out, then ultimately the conclusion might be correct later in the proceedings. But on a motion to dismiss, we have to look at the allegations in the complaint in the light most favorable to the plaintiff. And I still think at this point that even if you spot Mr. — even if you spot him a little on some of the things about who was the aggressor, you still — separate and apart from this whole issue about whether or not someone was battered or using self-defense, we still have this separate issue about what conduct the officers observed. I know it would be difficult for Mr. Bright to — difficult, if not impossible, to say what it is that the officers, you know, their discretionary judgment told them was happening in the particular instance. But even if they erred in using that judgment in deciding who was right or who was wrong, it still doesn't get to the point where you have officers being denied qualified immunity for making judgment, things that they're called on to do every day, trying to figure out what happened, what should they do about it. That's — To me, the question is whether he sufficiently alleged that the officers falsified what they were writing and falsified their reasons for Baker acting him. That's what it comes down to. And whether, when the complaint is read in the light most favorable to him, those allegations are sufficient. And if they are, then, you know, qualified immunity should have been denied and we go to the next stage and we see what happens once the evidence is submitted and whether there are material issues of fact at that point. But on a motion to dismiss, we can consider only the allegations in the complaint. The problem is, is that Mr. — and I went through and highlighted the portions that I believe were facts and the portions that I believe were conjecture and or conclusory allegations. And the complaint mostly is conclusory allegations and conjecture by Mr. Bright. And the actual facts, the ultimate facts themselves, don't get the court to the point where it can see objectively that an officer had some set of information or facts. It totally ignored that set of information and facts and falsified a new set of facts in order to justify having Mr. Bright Baker act it. That's the problem with the complaint is that it's not sufficient. It mostly, mostly is his conjecture and conclusory allegations because, again, it does not say what it is. He keeps saying, yes, they falsified, yes, they got it wrong, but he doesn't say how they would know that they — how is it that they would objectively know that they got it wrong. And I still say that even if they did, even if we say they got it wrong on the issue of whether or not he needed to be Baker acted. Your argument at its bottom, I think, is that when police officers arrive on a scene and they have parties who have had some sort of conflict provide different version of events, it's not unreasonable for the police officers right then and there to credit the version of one set of witnesses over the other witnesses. And here, there's nothing to indicate that the police had any motive or incentive to fabricate anything or to believe or disbelieve what the checker's employee said. That's the essence of your position, right? That is the essence of my position, and even though I know that Mr. Bright is arguing that that's what happened, if that were in the sequence of events, if, for instance, they arrived on scene, they heard the checker's employee's version, heard his version, and automatically put him in handcuffs in a police car to take him to jail for a battery or some type of assault on the employees, then after learning that he sues cops, then maybe that's a better set of facts. But that's not what this complaint shows. It shows they met him, they learned who he was, they continued to talk to other people, apparently heard some different version of it, but it wasn't until after he physically engaged the other employee, the other employee, that the police took any physical action against him, took any police action against him. And actually— Did you have a—I mean, it just came out this past week, so I would understand if not, but did you have an opportunity to see the Supreme Court's decision in Lozeman? I actually just started reading that case. I probably only got about three, because it's about how you can—there's a body—yes, I got the gist of it, which is there is a body of law that seems to indicate as long as there was probable cause or arguable probable cause of support and arrest, then you wouldn't get to the retaliation issue, that that would resolve it. But that there are some instances—but it seemed to be very limited to Lozeman, because it was political speech, because he was appearing before the city council and airing his grievances. At least what I did read, it gave me the impression that that was a very narrow set of circumstances where there could still be a claim that you made the arrest simply because of the speech. But I don't think that that is the same thing as what happened with Mr. Bright in this particular instance, because it doesn't—Mr. Bright doesn't say that he said anything during this particular instance to the police that would have made them retaliate against him for this. He says they just learned that, I guess, he had some prior disputes with the police department and say, what can we do for you? But not that automatically that led them to put him in handcuffs and take him to jail or do some—it wasn't until some time later—it's unclear how much time had passed between their arriving and their learning this information and then him getting into the altercation and then getting restrained and Baker-acted that this happened, but it still doesn't give the impression. The complaint doesn't allow the inference that automatically when they learn that he might have some past issues that they then retaliate against him immediately for whatever those past issues might have been. And if the court has any questions for me—unless the court has any questions for me, certainly the City of Tampa defendants would ask that the court affirm the district court's decision below. All right. Thank you very much. Counsel used the word intimates, you know, the complaint intimates this or intimates that. At this stage, the only inference we can draw is one in favor of Mr. Bright. The district court did not do that. You sue cops. What can we do for you? And then everything changed at that point. And he—after they realized who he was, after they realized there was a history there, his theory is they retaliated on him and they Baker-acted him. There's nothing in the complaint that indicates that he has a mental illness. And so they do not have probable cause to Baker-act him as apart from some type of arrest. So even considering the fight, I'm not sure how you get from the arrest to a Baker-act because there's nothing in the complaint that indicates he has a mental illness. That's going to come in as evidence. Do they have—were they aware of that? We'll find out. But to dismiss this with prejudice in the first substantive order, others have been dismissed for procedural reasons, but on the first substantive order is unduly harsh, particularly where they haven't moved for a more definite statement. They were on notice. They understood what was going on. They did move for a statement. And if the facts turn out not to be true, of course, Mr. Bright is subject to Rule 11 and other sanctions if what he's saying is not borne out. Thank you for your attention this morning. All right.  Mr. Lockham, you too were court-appointed to represent Mr. Bright, and we are truly appreciative of your service for him and for the court. Thank you. Thank you. We're in recess until tomorrow morning. All rise. Ten.      Four. Three. Two. One.  One.  Three.        Eleven.      Seventeen.   Twenty. Twenty-one. Twenty-two. Twenty-three. Twenty-four. Twenty-five. Twenty-six. Twenty-seven. Twenty-eight. Twenty-nine. Twenty-nine. Twenty-eight. Twenty-nine.